IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JESSE CALVIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 2:11-CV-04124 |
| | ) | |
| CITY OF LAURIE, MISSOURI, | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ORDER**

Pending before the Court is a motion for summary judgment [Doc. # 18] filed by

Defendant City of Laurie on Plaintiff Calvin's, Walker's, and James's claims.  These claims

include discriminatory discharge on the basis of age in violation of the Age Discrimination

in Employment Act ("ADEA"), 29 U.S.C. § 623, and the Missouri Human Rights Act

("MHRA"), Mo. Rev. Stat. §§ 213.010, *et. seq.*[1]  For the following reasons, the Court grants

in part the City's motion for summary judgment.

I.      **Factual background**

Jessie Calvin is the former police chief of the City of Laurie, Missouri.  Jeanne James

and James Walker are former police officers of the City of Laurie.  All three Plaintiffs were

over forty years old at the time their employment ended.  All three Plaintiffs were at-will

---

[1]Calvin has conceded that summary judgment may be granted for the City on the
retaliation claims of Plaintiffs Walker and James. [Doc. # 22 at 30].  Plaintiff Calvin does not
appear to assert a claim for retaliation. [Doc. # 1 at 5-7].

1

employees.

Calvin began serving as police chief in January 1989. Mayor Chorpening was elected in April 2008. In October 2009, Chorpening asked Calvin when he planned to retire. [Doc. # 22-2 at 4-5]. In December of 2009, in an evaluation of Calvin's appearance, Chorpening stated that Calvin was "too old and too fat to look like a police officer anymore." [Doc. # 22-2 at 12].[2] In April 2010, Chorpening sent Calvin a memorandum outlining a list of "administrative matters" Chorpening wanted Calvin to implement. One such matter was Chorpening's request that officers start issuing written, rather than oral, warnings for traffic violations. Calvin refused to implement this request, explaining to Chorpening that Calvin believed it to be illegal. Another matter was Chorpening's request that Calvin stagger lunch shifts so that someone was in the police department at all times. Chorpening testified that Calvin refused this request as well, although Calvin claims that this was a misunderstanding and that Calvin was cut off before he was able to explain that this was already his practice. Chorpening also requested copies of the officers' daily logs and warnings. Calvin refused to provide Chorpening with these copies. Chorpening asked Calvin about his refusal at a meeting of the Board of Aldermen, where Calvin admitted his refusal and explained that he

---

[2]The Court assumes these last two facts are undisputed. Both of these facts come from Calvin's deposition, the parties refer to them throughout the argument section of their briefs, and the City has not pointed to any contradictory evidence. These statements do not appear in the City's statement of uncontroverted facts. Calvin's brief does not include its own section of uncontroverted facts, although it discusses and cites to these statements in responding to the City's statement of uncontroverted facts. The City's reply brief did not address Calvin's responses. The Court takes this lack of response to mean the City does not contest their truth. This decision does not prejudice the City in any event, because the Court still finds that the City is entitled to summary judgment.

thought the logs contained protected information.  It is undisputed that Chorpening was aware that Calvin had advised police officers to avoid conversations with Chorpening. [Doc. # 22 at 7].  Calvin submitted his letter of resignation on June 3, 2010.

Walker has testified that Chorpening "asked me my age on time."  [Doc. # 19 at 11]. In June 2010, City Attorney Lorraine reported to the Board of Aldermen that Walker interfered with investigations of the police department "on multiple occasions," and the Board voted to terminate Walker, stating that it did so because of information gathered in an investigation. [Doc. # 19 at 12].

In June 2010, Mr. Loraine directed Calvin to suspend James without pay for insubordination, stating that James refused to talk to Mr. Lorraine during a hearing.  Later that month, Mr. Lorraine made a report and recommendation to the Board recommending that James be disciplined for failing to follow lawful orders from the Board.  The Board voted to terminate James, stating that it was because she failed to obey orders.

## II.    Discussion

### A.    Was Calvin Constructively Discharged?

Calvin has claimed wrongful termination under the ADEA.  This claim presupposes that Calvin was either fired or constructively discharged.  *See* [Doc. # 1 at 4].  Although Calvin resigned his position and concedes that he was not formally terminated, Calvin argues that the City constructively discharged him by deliberately creating intolerable work conditions.  In order to survive summary judgment, Calvin must show (1) that a reasonable person in his situation would find his work conditions intolerable; and (2) that the employer

3

either intended to force him to quit or could have reasonably foreseen that Calvin would have quit as a result of the City's actions. *Wright v. Rolette Cnty.*, 417 F.3d 879, 886 (8th Cir. 2005), *cert. denied*, 546 U.S. 1173.

The relevant facts asserted by Calvin in support of his argument consist of allegedly unreasonable directives from his supervisors and allegedly untrue accusations made by Chorpening against Calvin in front of the Board of Aldermen.[3]  Calvin fails in his briefing to discuss the facts of any case in which a court found constructive discharge or to analogize such facts to the facts of his own case.  But the Court agrees with the City that the undisputed facts of this case amount to "such things as loss of supervisory responsibilities, a feeling of being unfairly criticized, dissatisfaction with work assignments, and loss of pay", which "are insufficient to constitute a constructive discharge." *Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000).

The Court first examines the allegedly unreasonable directives.  The Court concludes that these directives amount to mere "dissatisfaction with work assignments".  *Id.*  Calvin provides a list of initial directives from Chorpening:

> 1. He wanted police officers to issue written warning on the uniform citation forms which would describe the offense and would be annotated as "WARNING ONLY."
>
> 2. He wanted Plaintiff Calvin to provide him with copies of the police officers' daily logs and all warnings issued the prior week by 10:00 a.m. every Monday.

---

[3]Calvin often refers in his argument to statements he made to others during his employment.  These statements show Calvin's subjective reaction to events but do not bear on how an objectively reasonable person would react.

4

3. He wanted the police department to be manned at all hours, unless police business required otherwise. He suggested staggering of lunch hours.

4. He directed that police officers refrain from visiting their private places of business or engage in other non-work related activities while on duty.

5. He ordered that all gas tickets be signed and turned in.

6. He then ordered that Plaintiff Calvin make sure that all police department personnel became aware of the aforementioned orders.

[Doc. # 22 at 21]. Calvin claims that he told Chorpening that Calvin viewed some of these directives as either illegal or impractical. This represents Calvin's view of the directives. But Calvin provides no evidence or argument why, from an objective standpoint, these directives are illegal or impractical, and, if so, how this created objectively intolerable work conditions. Even drawing all reasonable inferences in favor of Calvin, these directives appear to be the reasonable and permissible directives of a fairly new mayor trying to increase police accountability. These directives may well have made Calvin's job more difficult. But no reasonable juror could find that they made Calvin's job objectively intolerable.

Calvin states that Chorpening ordered Calvin to fire Officer Elkin and that Calvin told Chorpening that only the Board had the authority to hire and fire police officers. Calvin claims Chorpening indirectly threatened to appoint a new police chief because he was dissatisfied that Calvin did not immediately fire Officer Elkin. But Calvin presents no evidence to the Court that Chorpening knew Calvin did not have the authority to fire an officer. Further, Calvin claims he informed the Board of this situation but provides no

5

explanation of how the Board reacted to this information. Thus, Calvin's evidence only supports the reasonable inference that he was subjectively irritated at being asked to perform a task that he believed he did not have the authority to complete.

Calvin states that the Board of Aldermen informed him he could be terminated if he failed to engage in various activities, specifically, working one eight-hour shift per week. Calvin then states that he had never failed to work one eight-hour shift per week. Calvin has not argued that he took the Board's communication to mean that the Board of Aldermen meant to falsely accuse him of not fulfilling his duty. The Court thus fails to see how such a threat could create an intolerable workplace when Calvin, having complied with his duties, knew he had nothing to fear.

Finally, Calvin claims that the Board of Aldermen directed him to suspend Officer Walker without pay for ten days for campaigning for a candidate for city office in violation of city policy. Calvin explains that, without the invitation of the Board, he conducted his own investigation of the underlying claims against Walker and informed Chorpening that he refused to discipline Walker based on those findings. But Calvin does not discuss the reaction of Chorpening or the Board of Aldermen to his actions. It is thus unclear how the mere issuing of this directive would lead to objectively intolerable work conditions. Once again, this evidence only supports the reasonable inference that Calvin was subjectively irritated at being asked to suspend an officer on accusations he found to be untrue.

Calvin's only other assertion in support of his claim for constructive termination is that Chorpening made false accusations against him at a meeting of the Board of Alderman.

6

But Calvin is only able to demonstrate with these comments "a feeling of being unfairly criticized." *Tatom*, 228 F.3d at 932. The only indication Calvin provides of what Chorpening said is the following quote from the meeting minutes:

> . . . but you have indicated to me that you won't do these things and I just wanted to bring it out in the public to make sure they understand and I'm trying to deal with these things because we have a budget that is very tight and trying to find out what's happening with over time [sic], etc. and I'm also trying to make sure we do things so that I can make things happen in a way in which the City of Laurie is handled properly.

[Doc. # 22 at 22]. Calvin perceives two inaccuracies in this statement. Calvin claims that it was somehow wrong for Chorpening to claim he is "trying to find out what's happening with overtime" at this meeting when Chorpening had not issued Calvin any previous directives concerning overtime hours. Calvin does not explain why it is improper for Chorpening to ask questions at a meeting concerning a topic on which he had not previously issued a specific directive, and the argument is not pursuasive.

Calvin also claims that Chorpening's statement that "you have indicated to me that you won't do these things" was inaccurate because Calvin completed some of Chorpening's directives and merely asked for more information on another. But Calvin elsewhere admits that he told Chorpening that he thought some of the Chorpening's directives were either illegal or impractical. And it is undisputed that Calvin refused to comply with Chorpening's request for officers' daily logs, and admitted this refusal along with an explanation at the same Board meeting. On this evidence, even if Calvin intended to eventually comply with every directive, it simply would not be reasonable to infer, as Calvin seems to suggest, that

Chorpening lied about Calvin's refusal to obey directives in an attempt to create objectively intolerable conditions for Calvin.

Calvin has pointed to several actions by his superiors that made his job more difficult and that he doubtless did not like. But Calvin has not presented any evidence that these actions were objectively illegal or objectively impractical. And even assuming that some of these actions are illegal or impractical, a reasonable juror, considering these actions, could not conclude that the City had created objectively intolerable conditions nor that the City intended to do so. Calvin has merely demonstrated dissatisfaction with work assignments and a feeling of being unfairly criticized. These do not amount to a claim of constructive discharge under Eighth Circuit law.

Calvin's claim for discriminatory discharge under the ADEA relies on an adverse employment decision. Calvin admits he was not explicitly terminated. The Court has found that Calvin was not constructively discharged. Thus, the Court grants summary judgment for the City on Calvin's ADEA claim.

**B. Whether the City Terminated Walker or James in Violation of the ADEA**

    **1. Whether Walker or James can Establish a Prima Facie Case of Age Discrimination**

"In the absence of direct evidence of discrimination, courts apply the basic tripartite pattern of proof (prima facie case—rebuttal—pretext) as set forth in *McDonnell Douglas*...." *Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir. 1991) (internal quotes omitted). Walker and James do not appear to argue that theirs is a case of direct evidence, and such an

argument would be unpersuasive. Thus, in order to state a prima facie case, Walker and James must prove: (1) that they were members of a protected class when they were terminated; (2) that they were otherwise qualified for the position they held at the time they were terminated; (3) that the City terminated them, and (4) that their "discharge occurred in circumstances giving rise to an inference of unlawful discrimination." *Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008).

The only element of a prima facie case that the City appears to dispute is element (2), arguing that Walker and James were not qualified for the job.[4] Specifically, the City argues that Walker and James have not provided affirmative evidence that they were performing at their employer's legitimate expectations when terminated. But the Eighth Circuit has clarified that although courts have often required a plaintiff to show this, doing so is error. *Riley*, 518 F.3d at 1000. Rather, a plaintiff who has been performing the job successfully for years will be found to be "otherwise qualified." *See id.*

Here, the City has not called into question Walker's and James's years of service to the City, but has only pointed to the alleged behavioral incidents that led to each Plaintiff's respective termination. Such an argument is more properly reserved for later steps of the *McDonnell Douglas* framework, and does not bear on Walker's and James's prima facie

---

[4]In its opening brief, the City argued that neither Walker nor James had produced evidence that they were replaced by a younger employee. In their opposition brief, Walker and James cited to deposition testimony asserting that they had both been replaced by younger employees [Doc. # 22 at 28], and the City did not address this in its reply brief. The Court assumes that the City no longer disputes this element, and finds in the alternative that such a dispute would not be persuasive in light of record evidence that Walker and James were replaced by younger employees.

Case 2:11-cv-04124-NKL   Document 24   Filed 06/25/12   Page 9 of 14

case. *Id*. at 1001. Thus, the Court finds that Walker and James have stated a prima facie case of age discrimination, because the City has only challenged the qualifications of Walker and James.

### 2. Whether the City had a Legitimate, Non-Discriminatory Reason to Terminate

The City claims it has a legitimate, non-discriminatory reason for terminating Walker and James in that it terminated both employees for disciplinary issues. Walker and James have admitted that prior to terminating Walker and James, the Board of Aldermen heard testimony from its attorney, Tom Lorraine, that Walker and James had violated policy. "Of course, employee insubordination is ordinarily a legitimate non-discriminatory reason for adverse action...." *Kempcke v. Monsanto Co.*, 132 F.3d 442, 446 (8th Cir. 1998). This alone satisfies the City's burden "to produce evidence that [the Plaintiffs were] terminated for a legitimate, nondiscriminatory reason." *Riley*, 518 F.3d at 1000.

### 3. Whether Walker and James can Prove Pretext

The burden thus shifts to Walker and James to prove by a preponderance of the evidence that the City's reason for hiring them – violation of policy – was pretext for discrimination. *Riley*, 518 F.3d at 1000. Walker and James argue at length that the City's investigation of their alleged disciplinary issues was flawed. But even if Walker and James were able to prove that the City did not actually fire them for disciplinary issues, this would be "necessary, but not sufficient, to show a pretext for discrimination under the ADEA. In other words, the plaintiff must show that the employer's stated reason was false and that age

discrimination was the real reason." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011).

Walker and James cannot show that the City's stated reason for terminating them was false. It is undisputed that the City's attorney reported to the Board of Aldermen that both Walker and James had violated policy. Although Walker and James contest the evidence leading to that recommendation, they do not articulate a reason why the City was required to second-guess the legal conclusions of its attorney. Thus, Walker and James, as a matter of law, have not met their burden to show that the City's stated reason for terminating Walker and James – disciplinary issues – was a false one.

Further, even assuming Walker and James are correct that the City did not really terminate Walker and James for disciplinary problems, Walker and James cannot prove that age discrimination was the "real reason" for their termination. The only evidence of age discrimination relating to Walker is Walker's testimony that Chorpening "asked me my age one time." [Doc. # 19-2 at A 032]. But this single comment arguably falls short of the situation in *Montgomery v. John Deere & Co.*, 169 F.3d 556, 560-61 (8th Cir. 1999), where a plaintiff's supervisor frequently referred to him as an "old fart", but produced "no other evidence of pretext" and the court thus found that "these comments, standing alone, do not provide a sufficient basis for an inference of age discrimination."

James has produced no evidence of age discrimination other than pointing out that after Calvin resigned, James and Walker were the oldest officers on staff. Walker and James cite *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820-21 (Mo. 2007) (en banc),

for the proposition that this is "direct evidence of age discrimination preventing summary judgment." [Doc. # 22 at 31]. But that case was discussing the tape-recorded comments of the decisionmaker in the plaintiff's termination telling the city administrator that he was trying to get rid of all employees over the age of fifty-five. *Daugherty*, 231 S.W.3d at 820. James's evidence has nowhere near the persuasive power of this evidence, and is more akin to the long line of plaintiffs who have unsuccessfully asked courts to presume age discrimination merely from the fact that their employer replaced them with a younger employee. *See, e.g., Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007) (that the plaintiff was replaced by a younger employee "possesses insufficient probative value to persuade a reasonable jury that plaintiff was discriminated against.") (internal quotes and alterations omitted). Further, Calvin has also testified that Walker and James both worked for Calvin the longest of any officer on the police force, and that Calvin thought that Walker and James were probably terminated for their perceived support of Calvin. [Doc. # 19 at 11].

Although there is evidence that Chorpening once told Calvin he "looks too old and fat to be a police officer", the City persuasively argues that this comment has little bearing on James and Walker. James and Walker were eleven and nine years younger than Calvin, respectively, and there is not evidence on the record of how "old" or "fat" they looked. Further, Chorpening appears to have made this comment in response to an evaluation protocol that directly prompted him to comment on Calvin's appearance. There is no evidence that Chorpening thought that someone who "looks to old and fat to be a police officer" is, in fact, unfit to continue employment as a police officer.

12

Walker and James have also admitted to other rationales for their termination that are unrelated to age. James has admitted that he also thinks he was terminated partially because of her depression, based on a disparaging remark from a member of the Board of Aldermen [Doc. # 19-2 at A 023], and because she supported Calvin and worked for him for sixteen years – since Chorpening had a longstanding grudge against Calvin. [Doc. # 19-2 at A 0 27]. Walker also admitted that he thinks he might have been fired because he was "supportive of Chief Calvin". [Doc. # 19-2 at A 036].

On this evidence, even casting all reasonable inferences in favor of Walker and James, no reasonable juror could conclude that Walker and James have proven by a preponderance of evidence that the City fired them on the basis of age. There is only inconsequential evidence, even when considered in combination, from which to draw an inference that the City viewed James and Walker as too old to perform their jobs. The City is thus entitled to summary judgment on Walker's and James's claims for wrongful termination under the ADEA and the MHRA.

### C. The Plaintiffs' Claims Under the MHRA

The MHRA is analyzed differently than the ADEA, and a plaintiff can survive summary judgment "if there is a genuine issue of material fact as to whether age...was a 'contributing factor' in the City's termination decision." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. 2007) (en banc); *Clark v. Matthews Intern. Corp.*, 639 F.3d 391, 398 (8th Cir. 2011). Because the Court grants summary judgment on all of the Plaintiffs' federal claims, and because diversity jurisdiction does not appear to exist, the

proper route is to dismiss the remaining state law claims without prejudice so they can be decided by Missouri courts. *Wierman v. Casey's General Stores*, 638 F.3d 984, 1003 (8th Cir. 2011). Thus the Court declines to decide the Plaintiffs' MHRA claims, and dismisses them without prejudice.

## IV. Conclusion

Accordingly, it is hereby ORDERED that the City's motion for summary judgment [Doc. # 18] is GRANTED in part as to Calvin's ADEA claims. Calvin's MHRA claims are dismissed without prejudice so that they can be decided by a Missouri court.

S/NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: June 25, 2012
Jefferson City, Missouri